UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

LYCURGAN INC,

      Plaintiff,

      v.

VISION ARMORY, et al.,

      Defendants.

Case No. 3:13-CV-1331 JD

## OPINION AND ORDER

This matter comes before the Court on Lycurgan Inc.'s ("Lycurgan") motion for an order to show cause and to impress a constructive trust. (DE 258.) The motion requests that the Court grant equitable relief in the form of a constructive trust on $578,839.20 Lycurgan paid to the Defendants and the proceeds of that money, including certain websites developed by Chad Myers ("Myers") and the proceeds of those websites. (DE 258 at 1.) Lycurgan also requests that the Court issue an order to show cause directed at Myers as to why a constructive trust should not be impressed. (*Id.* at 2.) For the following reasons, the Court denies Lycurgan's motion.

### A.   Factual Background

Lycurgan, a California-based firearm parts retailer, brought suit[1] against Indiana-based Defendants: Blood Brothers Armory, LLC ("Blood Brothers"), a supplier of gun components including AR-15 lower receivers; Richard (Brink) Rood, Jr. ("Rood"), Blood Brothers' sole member; Vision Armory LLC ("Vision Armory"), an affiliate of Blood Brothers; and Michiana

---

[1] On August 26, 2013, the action was commenced by Lycurgan in the Superior Court of California. (DE 1-2.) After removal, it was transferred to this Court by the U.S. District Court for the Southern District of California under 28 U.S.C. § 1404(a) on the basis of convenience. (DE 10.)

Investments II LLC ("Michiana Investments"), the owner of the membership interests of Vision

Armory. Lycurgan alleged (among other things) that it entered into a contract to purchase 80%

AR-15 lower receivers from Blood Brothers,[2] that Blood Brothers breached the contract by

tendering non-conforming goods (by not using 7075 aluminum and not implementing certain

specifications), and that Lycurgan suffered damages as a result. According to Lycurgan, it paid

$578,839.20 in deposits to Blood Brothers for the non-conforming goods. (DE 38 ¶ 80.)

In response, Defendants filed their answer and counterclaims, in which they alleged

(among other things) that Lycurgan breached the contract by wrongfully rejecting and not paying

for the goods tendered by Blood Brothers and by not honoring its promise that Blood Brothers

would be its exclusive supplier of gun components. On September 13, 2016, the Court denied

Defendants' partial motion for summary judgment (DE 90) and denied Lycurgan's partial motion

for summary judgment (DE 93) with respect to the contract-related claims and counterclaims, but

the motion was granted with respect to Defendants' counterclaims for false advertising,

defamation, and abuse of process. (DE 126.)

On November 4, 2016, the Court received notice of the Entity Defendants' filings for

bankruptcy. (DE 141.) On July 27, 2017, in accordance with the bankruptcy court's order lifting

the automatic stay in each of the bankruptcy actions and the parties' agreement that the order

allows Lycurgan to proceed to judgment in this action, the Court lifted the stay here as to all

named defendants. (DE 157.) The parties stipulated to dismissing the remaining counterclaims

against Lycurgan in May 2017, which the Court granted. (DE 150; DE 151.) The remaining

---

[2] An 80% lower receiver refers "to an item that some may believe has not yet reached a stage of manufacture that meets the definition of 'firearm frame' or 'receiver' according to the Gun Control Act (GCA)." *What is an "80%" or "Unfinished" Receiver*, https://www.atf.gov/firearms/qa/what-%E2%80%9C80%E2%80%9D-or-%E2%80%9Cunfinished-receiver (last reviewed Feb. 6, 2020).

claims following that stipulated dismissal were: 1) Breach of Contract/Breach of Personal Guarantee; 2) Fraud – Intentional Representation; and 3) Fraud – False Promise. (DE 38.) Additionally, the fourth, fifth, and sixth causes of action against the Defendants, seeking equitable relief, remained. (*Id.*) The equitable causes of action alleged (among other things) that certain defendants had transferred assets to other defendants in an attempt to hinder the defendants' creditors and requested the Court to issue appropriate equitable relief, including the "imposition of a constructive trust." (*Id.* ¶ 112.)

On December 18, 2017, counsel for Defendants moved to withdraw, which the Court granted during a status conference where it also advised Rood that the Entity Defendants cannot proceed pro se. (DE 165, 168.) On November 8, 2018, this Court ordered that the Entity Defendants had to obtain replacement counsel because corporate entities cannot proceed pro se, or a default would be entered against them. (DE 175.) Since the Entity Defendants failed to obtain counsel, on December 4, 2018, the Court issued an order directing the clerk to enter default against the Entity Defendants, which the clerk entered. (DE 177; DE 178.) Ten months later, Lycurgan filed a notice with the Court indicating that Rood had died. (DE 187.) The Court referred Lycurgan's motion to substitute party to Magistrate Judge Michael G. Gotsch, Sr. (DE 191.) On May 14, 2020, Magistrate Judge Gotsch granted Lycurgan's motion to substitute party with Eric S. Pavlack as Special Administrator of the Estate of Richard R. Rood, Jr. in Rood's place as a defendant in this action. (DE 201.)

Lycurgan then moved for entry of default judgment as to Defendants Blood Brothers, Vision Armory, and Michiana Investments. (DE 215.) On November 25, 2020, the Court granted this motion for default judgment, finding that the failure to obtain replacement counsel was a "willful choice not to participate in this case, which warrants a default judgment." (DE 220 at 5.)

After examining affidavits submitted in support of the damages sought, the Court found that Defendants Blood Brothers, Vision Armory, and Michiana Investments were liable in the total amount of $3,045,589.88. (*Id.* at 9.) However, the Court emphasized that the Default Judgment did not apply to "[t]he fourth, fifth, and sixth causes of action against the Defendants, which seek equitable relief, [and] are still pending." (*Id.* at 3.) On December 3, 2020, Lycurgan moved the Court to approve an unopposed consent judgment against Defendant Eric Pavlack, as the Special Administrator of the Estate of Richard R. Rood, Jr. (DE 221.) The Court then approved this consent judgment in the amount of $3,088,125.89. (DE 224.) However, following the entry of default judgment and approval of the consent judgment, the equitable causes of action still remained.

On December 18, 2020, Lycurgan filed a memorandum indicating that it wanted to pursue post-judgment discovery concerning its outstanding equitable claims. (DE 227.) In this memorandum, Lycurgan asserted that it would ultimately request the imposition of a constructive trust on the $578,839.20 that Defendants had received from Lycurgan, as well as the proceeds from that amount. (*Id.* at 8–9.) Lycurgan alleged that Defendant Rood had transferred property to non-party Myers in a bad-faith purchase. (*Id.* at 8.)

After conducting post-judgment discovery, Lycurgan filed a motion for an order impressing a constructive trust and issuance of order to show cause. (DE 258.)[3] In this motion, Lycurgan alleges that, in 2013, Defendant Rood first "swindled Lycurgan, Inc. out of

---

[3] The Court notes that Lycurgan, in its motion to impress a constructive trust (DE 258 at 9), asks that the Court incorporate its prior memorandum "by reference" (DE 227). While the Court has read this prior memorandum, it will only consider the arguments raised by Lycurgan in its motion to impress a constructive trust. Lycurgan filed its motion and must stand on the arguments it raises in that motion. The Court also notes that Lycurgan's motion to impress a constructive trust is already 23 pages long, while its prior memorandum is 18 pages long. Under Local Rule 7-1(e), supporting briefs "ordinarily must not exceed 25 pages." Considering arguments made in a lengthy prior memorandum based on a request to incorporate that memorandum by reference would undermine the purpose of this rule.

$578,839.20." (*Id.* at 5.) According to Lycurgan, Rood then entered a "partnership" with his cousin Chad Myers "to build a website to sell . . . unfinished lower receivers direct[ly] to consumers," which was funded by the money Rood took from Lycurgan. (*Id.* at 5–6.) This website, Ar-parts.net, displayed the Vision Armory business name. (*Id.* at 12.) Eventually, Myers registered another website, 80-lower.com, which also displayed the Vision Armory business name. (*Id.* at 13.) Rather than having Myers be paid directly, his share of the profits were sent to his company Kick Start Marketing, which later changed its name to Tactical Gear Heads ("TGH"). (*Id.* at 13.) In September of 2014, a dispute arose between Myers and Rood, where Myers demanded that Rood owed him $18,500. (*Id.*) Then, at some point after January 28, 2015, 80-lower.com's branding "changed to reflect that [it] was a division of Kick Start Marketing, LLC" and not a Vision Armory Company. (*Id.* at 7.) According to Lycurgan, rather than the change in name suggesting there had been a fallout over the dispute concerning the $18,500, this "[s]uggest[ed] that Rood was designating third parties, namely Chad Myers, through various entities, to hold assets in trust for him." (*Id.*) Lycurgan does not explain why it believes the change in name suggested that Rood was giving Myers assets to hold in trust. However, Lycurgan goes on to assert that Myers breached his fiduciary duty to Rood and Vision Armory when he "took control of Vision Armory's websites" which were built from "[t]he money that was fraudulently obtained from Lyucrgan." (*Id.* at 20.)[4] Based on this breach of fiduciary duty, as well its assertion that the websites were funded by the money Rood took from Lycurgan, Lycurgan argues that a constructive trust should be impressed for the benefit of Lycurgan on the

---

[4] The Court is left to speculate how changing the branding of the website both suggests that Rood had given Myers assets to hold in trust and that he breached his fiduciary duty to Rood. The former suggests that Rood had *agreed* with Myers about changing the websites designation in exchange for the assets held in trust. If anything, this would support that a fiduciary duty was not breached.

$578,839.20 given to Rood and the proceeds of that amount, including Ar-parts.net, 80-lower.com, and the two websites' profits. (*Id.* at 1, 20–21.)

Myers and TGH then filed a motion to intervene (DE 262) and a response to Lycurgan's motion seeking imposition of a constructive trust (DE 264). In this response, Myers and TGH argue that a constructive trust is not warranted. First, they disagree with Lycurgan's characterization of his relationship with Rood as a "partnership." Instead, they assert that "Myers, through one of his marketing businesses, prov,ided internet marketing and ecommerce services to Rood's gun parts business, and was supposed to be paid by commissions on gun part orders that were directed to Rood as a result of those services." (DE 264 at 2.) They also assert that Myers' websites were not funded by Lycurgan and that the only money Myers received from Rood was sales commissions for marketing services in the amount $62,279.55, which was "a small fraction of what Lycurgan claim[ed] Rood stole from it." (*Id.* at 4.) Myers and TGH argue that no constructive trust over the websites and the proceeds of the websites can be formed for the benefit of Lycurgan because Rood and Myers were not in a partnership, Myers owed Lycurgan no duty, and Lycurgan gave Myers no property.

Under Local Rule 7-1(d), Lycurgan had seven days to file a reply to Myers' Response and 14 days within which to respond to the Motion to Intervene. Lycurgan then filed its reply to Myers' Response 23 days  after it was due (DE 266) and its Response to Myers' and TGH's Motion to Intervene 21 days after it was due. (DE 267.) Myers and TGH then filed a motion to strike these belated filing (DE 268), which the Court then granted (DE 270).

With both motions ripe, the Court now considers Lycurgan's Motion for Order to Show Cause and to Impress a Constructive Trust (DE 258) and Myers' Motion to Intervene (DE 262).

**B.    Discussion**

### *(1) Motion to intervene*

The Court first considers Myers and TGH's Motion to Intervene. (DE 262.) In order to intervene in a federal lawsuit under Federal Rule of Civil Procedure 24(a)(2), four elements must be met: "(1) timely application; (2) an interest relating to the subject matter of the action; (3) potential impairment, as a practical matter, of that interest by the disposition of the action; and (4) lack of adequate representation of the interest by the existing parties to the action." *Illinois v. City of Chicago*, 912 F.3d 979, 984 (7th Cir. 2019) (quoting *Shea v. Angulo*, 19 F.3d 343, 346 (7th Cir. 1994)). "The proposed intervenor has the burden of establishing all four elements; the lack of even one requires that the court deny the motion." *Planned Parenthood of Wisconsin, Inc. v. Kaul*, 942 F.3d 793, 797 (7th Cir. 2019). If granted leave to intervene as of right, the intervenor has the full rights of a party. *Id.*

### *(a) Interest related to subject matter and potential impairment to that interest*

"Intervention as of right requires a direct, significant, and legally protectable interest in the question at issue in the lawsuit." *Wisconsin Educ. Ass'n Council v. Walker*, 705 F.3d 640, 658 (7th Cir. 2013) (quotation marks and citation omitted). The Seventh Circuit has clarified that this interest "is something more than a mere betting interest . . . but less than a property right." *Sec. Ins. Co. of Hartford v. Schipporeit, Inc.*, 69 F.3d 1377, 1381 (7th Cir. 1995) (quotation marks and citations omitted). "Whether an applicant has an interest sufficient to warrant intervention as a matter of right is a highly fact-specific determination, making comparison to other cases of limited value." *Id.* (citing *Reich v. ABC/York-Estes Corp.*, 64 F.3d 316, 321 (7th Cir. 1995); *Shea v. Angulo*, 19 F.3d 343, 349 (7th Cir. 1994)).

Here, Myers provided an affidavit that the two websites Lycurgan seeks to establish a constructive trust over, "Ar-parts.net" and "80-lower.com," were purchased by his company,

Springboard Marketing, in 2013 and 2014, and have always been owned by one of his companies. (DE 242 ¶ 10.) According to Myers deposition testimony, Kickstart Marketing later changed its name to Tactical Gearheads LLC ("TGH"). (DE 257 at 85:3–6.) Lycurgan does not dispute that it was Myers' company which purchased the website domain names. (DE 258 at 12.) Rather, Lycurgan argues that Myers owed a fiduciary duty to Vision Armory and Rood, that he breached this fiduciary duty when he took control of the websites, and that the property actually belongs to Vision Armory. (*Id.* at 18.) Lycurgan also claims that these websites were built from the $578,839.20 that Rood took from Lycurgan and requests that the Court impress a constructive trust on the "proceeds of the operation of these websites," which it believe has resulted in somewhere close to $12,000,000 in profits for Myers. (*Id.* at 1, 14.)

Both TGH and Myers have obvious interests in the subject matter of the action. TGH purchased these domain names and maintains it still owns these domain names, while Myers owns TGH. Because the subject matter is property in their possession which they claim they own, it's clear that both Myers and TGH have an interest in the subject matter of the suit. The potential impairment to Myers and TGH is also obvious from the property interest at stake. If Lycurgan's request for a constructive trust is approved, then Myers and TGH will have to convey the domain names of not only "Ar-parts.net" and "80-lower.com" to Lycurgan, but also the proceeds from those sites. *See Zoeller v. E. Chicago Second Century, Inc.*, 904 N.E.2d 213, 221 (Ind. 2009) (defining a constructive trust as "[a] relationship with respect to property subjecting the person by whom the title to the property is held to an equitable duty to convey it to another on the ground that his acquisition or retention of the property is wrongful and that he would be unjustly enriched if he were permitted to retain the property").

Accordingly, Myers and TGH have shown both an interest relating to the subject matter of the action and also potential impairment.

### (b)  Lack of adequate representation

Next, the Court considers lack of adequate representation. There is a three-tiered methodology for evaluating adequacy of representation under Rule 24(a)(2). The default rule is that the applicant simply has to show that the "representation of his interest 'may be' inadequate." *Driftless Area Land Conservancy v. Huebsch*, 969 F.3d 742, 747 (7th Cir. 2020) (quoting *Trbovich v. United Mine Workers of America*, 404 U.S. 528, 538 (1972)). The burden of making this showing is "minimal." *Id.* However, if the interest of the absentee "is identical to that of an existing party," then "a rebuttable presumption of adequate representation arises." *Id.* An even greater burden exists if a party is "a governmental agency or official with a legal duty to represent the absentee's interest." *Id.* When that's the case, the absentee "must show that the existing representation is grossly negligent or in bad faith." *Id.*

Here, there is a clear lack of adequate representation. No party has similar, let alone identical, interests to the intervenors. Lycurgan's interest is directly at odds with Myers and TGH, as Lycurgan is seeking to impress a constructive trust on their property. Defendants also have interests that are dissimilar from Myers and TGH: they are bankrupt, unrepresented, and have already had default judgments impressed against them after they failed to obtain counsel. If the Defendants were unwilling to obtain counsel to defend *themselves* from a default judgment, they are obviously not up to the task of representing the interests of an outside party.

Accordingly, the Court finds that there is a lack of adequate representation.

### (c)  Timely application

There is no bright-line rule for timeliness to intervene. Rather, "[t]he test for timeliness is essentially one of reasonableness: 'potential intervenors need to be reasonably diligent in learning of a suit that might affect their rights, and upon so learning they need to act reasonably promptly.'" *Reich*, 64 F.3d at 321 (quoting *Nissei Sangyo America, Ltd., v. United States*, 31 F.3d 435, 438 (7th Cir. 1994)). In determining timeliness, the Court considers: "(1) the length of time the intervenor knew or should have known of his interest in this case, (2) the prejudice to the original parties caused by the delay, (3) the resulting prejudice to the intervenor if the motion is denied, and (4) any unusual circumstances." *South v. Rowe*, 759 F.2d 610, 612 (7th Cir. 1985) (citing *United States v. Kemper Money Market Fund, Inc*., 704 F.2d 389, 391 (7th Cir. 1983)).

The Court finds that Myers and TGH made a timely application to intervene. Their motion to intervene was made only two weeks after the motion to show cause and impress a constructive trust by Lycurgan. (DE 258; DE 262.) Moreover, neither the Defendants nor the Plaintiff will be prejudiced by the intervention. Defendants have already had judgments entered against them and are bankrupt, have no assets, and have no counsel. They don't stand to lose anything by having a third party intervene. Additionally, given that the motion to intervene was filed only two weeks after the motion seeking a constructive trust, any prejudice from delay to Lycurgan is minimal. They could have named Myers as a party to the suit in their amended complaint, but they did not. (DE 38.) However, while the prejudice to Lycurgan is minimal, the prejudice to the intervenors would be substantial. They were not named as defendants in the suit and, as discussed above, have a significant property interest at stake.

Accordingly, the Court finds that the application is timely. Because each of the four elements necessary to intervene under Federal Rule of Civil Procedure 24(a)(2) have been satisfied, the Court grants Myers and TGH's motion to intervene with respect to whether a

constructive trust should be imposed and a show cause order issued.  *See Jeffries v. Swank*, 317

F.R.D. 543, 555 (N.D. Ill. 2016) (granting a motion to intervene under Rule 24(a)(2) for a

limited post-judgment purpose).

### (d) Jurisdiction

The Court also notes that, now that Myers and TGH have intervened, they are now

parties to the suit. *Planned Parenthood of Wisconsin, Inc. v. Kaul*, 942 F.3d 793, 797 (7th Cir.

2019) ("A party granted leave to intervene as of right under [Rule 24(a)(2)  has the full rights of

a party."); *see also Driftless Area Land Conservancy v. Pub. Serv. Comm'n of Wisconsin*, No.

19-CV-1007-WMC, 2020 WL 7186150, at *2 (W.D. Wis. Dec. 7, 2020) (quoting *Columbus-Am.*

*Discovery Grp. v. Atl. Mut. Ins. Co.*, 974 F.2d 450, 469 (4th Cir. 1992)) ("In general, intervenors

of right assume the status of full participants in a lawsuit and are normally treated as if they were

original parties once intervention is granted."). Had Myers and TGH remained silent, and not

intervened, then they would have remained non-parties.

The baseline assumption is that non-parties are not bound by in personam judgments.

*Oneida Nation v. Vill. of Hobart*, 968 F.3d 664, 687 (7th Cir. 2020). The Court would likely not

have had jurisdiction to issue an order purporting to bind Myers or TGH had they failed to

intervene and remained silent.[5] As the Supreme Court explained in *Taylor v. Sturgell*, the rule

---

[5] In both Indiana and California, constructive trusts are judgments in personam. Both states generally recognize that equitable acts result in in personam judgments. *See Mills v. Mills*, 305 P.2d 61, 67 (Cal. Ct. App. 1956) ("Equity acts *in personam*, not in rem . . . ."); *see also State ex rel. Moore v. Bd. of Comm'rs of Clinton Cty.*, 70 N.E. 373, 376 (Ind. 1904) ("Equity acts in personam . . . ."). Furthermore, in both states, a constructive trust is considered an equitable remedy. *Kalwitz v. Est. of Kalwitz*, 822 N.E.2d 274, 280 (Ind. Ct. App. 2005) (explaining that a constructive trust is "an equitable remedy [rather] than an independent cause of action"); *Habitat Trust for Wildlife, Inc. v. City of Rancho Cucamonga*, 96 Cal. Rptr. 3d 813, 840 (Cal. Ct. App. 2009) (Imposition of "[a] constructive trust is an equitable remedy to compel the transfer of property by one who is not justly entitled to it to one who is."). Other states have also recognized that constructive trusts require judgments in personam. *See In re Marriage of Allen*, 724 P.2d 651, 657 (Colo. 1986) ("The successful plaintiff in a constructive trust action wins an *in personam* order that requires the defendant, the constructive trustee, to transfer specific property in some form to the plaintiff, the beneficiary of the trust." (citation omitted)). Therefore, had Myers and TGH failed to intervene and remained

that a non-party is not bound by a judgment in personam is because that non-party "has not had a full and fair opportunity to litigate the claims and issues settled in that suit." 553 U.S. 880, 892 (2008).

However, Myers and TGH intervened and are now parties to the action. Accordingly, they have had a full and fair opportunity to make their position known and the Court has jurisdiction to issue a binding order.[6]

### (2) Motion for order to show cause

Lycurgan requests that the Court issue an order to show cause to Myers as to why a constructive trust should not be impressed on Ar-parts.net and 80-lower.com and the proceeds from such websites, for the benefit of Lycurgan. (DE 258 at 2.) A "show cause order" is "[a]n order directing a party to appear in court and explain why the party took (or failed to take) some action or why the court should or should not impose some sanction or grant some relief." *Show Cause Order*, Black's Law Dictionary (11th ed. 2019).

Myers and TGH have intervened as of right and filed a response to Lycurgan's motion seeking to impress a constructive trust. (DE 264.) In this response, Myers and TGH argue that a constructive trust is not warranted over the websites and their proceeds. (*Id.*) Because Myers and TGH have already responded to Lycurgan's request for imposition of a constructive trust, issuing a show cause order is unnecessary.

---

non-parties, the Court likely would have been without jurisdiction to issue an order purporting to bind them as non-parties.

[6] The Court emphasizes that Myers and TGH have only intervened as to Lycurgan's motion to impress a constructive trust and issue a show cause order. (DE 258.) Their interest in the action is confined to that motion, and Myers and TGH have only made their position known as it relates to that motion. Therefore, the Court's jurisdiction only extends over Myers and TGH as it relates to Lycurgan's request that the Court impose a constructive trust and issue a show cause order.

Accordingly, the Court finds that Lycurgan's request for a show cause order is moot.

### (3) Motion to impress a constructive trust

The Court initially examines which states' substantive law concerning constructive trusts applies. A federal court sitting in diversity generally must apply the forum state's choice of law rules in order to determine the applicable substantive law. *Sound of Music Co. v. Minn. Min. & Mfg. Co.*, 477 F.3d 910, 915 (7th Cir. 2007). However, when a case is transferred pursuant to 28 U.S.C. § 1404(a), the court will apply the choice of law rules of the transferor court, which, in this case, is California. *Van Dusen v. Barrack*, 376 U.S. 612, 639 (1964).

In California, to determine which jurisdiction's law governs, courts apply a governmental interest analysis with respect to issues unrelated to contract interpretation. *McCann v. Foster Wheeler LLC*, 225 P.3d 516, 527 (Cal. 2010); *Tucci v. Club Mediterranee, S.A.*, 107 Cal. Rptr. 2d 401, 407 (Cal. Ct. App. 2001). The governmental interest approach involves three steps:

> First, the court determines whether the relevant law of each of the potentially affected jurisdictions with regard to the particular issue in question is the same or different. Second, if there is a difference, the court examines each jurisdiction's interest in the application of its own law under the circumstances of the particular case to determine whether a true conflict exists. Third, if the court finds that there is a true conflict, it carefully evaluates and compares the nature and strength of the interest of each jurisdiction in the application of its own law to determine which state's interest would be more impaired if its policy were subordinated to the policy of the other state and then ultimately applies the law of the state whose interest would be the more impaired if its law were not applied.

*Chen v. Los Angeles Truck Centers, LLC*, 444 P.3d 727, 730–31 (Cal. 2019) (quotations and citations omitted). Here, the Court need not proceed past the first step, as the law in Indiana and California concerning constructive trusts is the same.

In both states, a constructive trust is an equitable remedy which requires an individual to transfer property wrongfully acquired where they would be unjustly enriched if they held onto

the property. *Zoeller*, 904 N.E.2d at 221 (explaining that Indiana law defines a constructive trust as "[a] relationship with respect to property subjecting the person by whom the title to the property is held to an equitable duty to convey it to another on the ground that his acquisition or retention of the property is wrongful and that he would be unjustly enriched if he were permitted to retain the property"); *Kalwitz v. Est. of Kalwitz*, 822 N.E.2d 274, 280 (Ind. Ct. App. 2005) (explaining that a constructive trust is "an equitable remedy [rather] than an independent cause of action); *Meister v. Mensinger*, 178 Cal. Rptr. 3d 604, 619 (Cal. Ct. App. 2014) (Under California Law, a "constructive trust is an involuntary equitable trust created by operation of law as a remedy to compel the transfer of property from the person wrongfully holding it to the rightful owners . . . The essence of the theory of constructive trust is to prevent unjust enrichment and to prevent a person from taking advantage of his or her own wrongdoing.").

Additionally, under both Indiana and California law, the evidence must be clear and convincing in order to establish a constructive trust. *Melloh v. Gladis*, 309 N.E.2d 433, 440 (Ind. 1974) ("We fully endorse the proposition that to establish a constructive trust the evidence must be clear and convincing and not compatible with another result."); *Optional Cap., Inc. v. DAS Corp.*, 166 Cal. Rptr. 3d 705, 715 (Cal. Ct. App. 2014) (quoting *Taylor v. Fields*, 224 Cal. Rptr 186 (1986)) ("[T]he party attempting to establish the constructive trust must establish the claim by clear and convincing evidence.").

The Court finds that Lycurgan has failed to meet this burden. While Lycurgan's argument is oftentimes unclear, it appears to argue a constructive trust for the benefit of Lycurgan is warranted for two reasons. First, Lycurgan argues that Myers owed a fiduciary duty to Rood and Vision Armory (DE 258 at 14–15), which he breached by taking "control of Vision Armory's Websites." (DE 258 at 20.) Lycurgan asserts that this breach of duty makes Myers a "trustee of

the property of Vision Armory" and that he "should be held to account for that property."[7] (*Id.*) Second, Lycurgan asserts that "[t]he money that Richard R. Rood, Jr. and his entities took from Lycurgan, Inc., were parlayed by Myers and Rood into a very successful web business . . . ." (DE 258 at 5–6.)

The Court begins with Lycurgan's first argument, which fails because Lycurgan cannot show that is has any right to the property by virtue of a breach of fiduciary duty. In both California and Indiana, when breach of fiduciary duty is the basis for imposition of a constructive trust, it is the burden of the complaining party to prove that it has a right to that property. *See Communist Party v. 522 Valencia, Inc.*, 41 Cal. Rptr. 2d 618, 623 (Cal. Ct. App. 1995) (writing that an essential condition to the imposition of a constructive trust is showing "the *right* of a complaining party to that res"); *see also Morfin v. Est. of Martinez*, 831 N.E.2d 791, 802 (Ind. Ct. App. 2005) ("A plaintiff alleging the existence of constructive fraud has the burden of proving the existence of a duty *owing by the party to be charged to the complaining party* due to their relationship, and the gaining of an advantage by the party to be charged with fraud." (emphasis added)).

However, nowhere in its motion does Lycurgan argue that Myers owed Lycurgan any fiduciary duty. Even if such a claim had been made, it would be without any merit. Lycurgan ordered gun parts from Rood and Vision Armory in February of 2013. (DE 258 at 6–7; DE 128-2

---

[7] The phrase "held to account" is ambiguous, as it doesn't indicate the beneficiary of the constructive trust of which Myers is allegedly the trustee. However, because the form of relief requested is a constructive trust for "the benefit of Lycurgan" (DE 258 at 21), the Court interprets "held to account" as asserting that a constructive trust should be formed over the websites and the proceeds of the websites *for the benefit of Lycurgan*. To the extent Lycurgan is claiming that Vision Armory is the beneficiary of the constructive trust, Lycurgan never explains how this would ultimately support a constructive trust where Lycurgan would be the beneficiary. Nor does Lycurgan explain why it would have standing to seek a constructive trust on behalf of Vision Armory. Accordingly, these undeveloped arguments are waived. *See United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991) ("[P]erfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived . . . .").

¶ 2 .) It wasn't until after this order was made, in April of 2013, that Myers and Rood began discussing the possibility of building a website to sell gun parts directly to consumers. (DE 264-1, Exhibit 1 ¶¶ 2, 15; DE 257 at 26:25–27:3.) These websites only went live *after* this suit was filed. (DE 264-1, Exhibit 1–2; DE 257 at 48:19–22.) There is simply no evidence that Myers had a business relationship with Lycurgan, owed Lycurgan a fiduciary duty, or breached that fiduciary duty.

Lycurgan argues that a prior case, *Wash. Theatre Co. v. Marion Theatre Corp.*, is analogous and supports imposition of a constructive trust. 81 N.E. 2d 688 (Ind. Ct. App. 1948). The Court disagrees. Instead of helping its case, *Wash. Theatre Co.* actually illustrates why a constructive trust should not be impressed for the benefit of Lycurgan.

In *Wash. Theatre Co.*, the Washington Theatre Corporation had been leasing several theaters to the Marion Theatre Corporation. *Id.* at 689–691. When it came time to renew the lease, the Marion Theatre Corporation asked the manager and operator of the theaters, Mr. Connors, to negotiate renewal of the lease on its behalf. *Id.* at 691. All parties agreed that Connors, in this position, had a fiduciary duty to the Marion Theatre Corporation. *Id.* at 692. However, Connors then "secretly procured the new lease in his own name . . . ." *Id.* at 693. The Court impressed a constructive trust on the lease, with Connors as trustee, for the benefit of Marion Theatre Corporation, writing that:

> There is a broad rule of equity grounded upon the high duty of a trustee or fiduciary to his beneficiary or correlate which does not permit him to acquire an interest in the subject-matter of the trust to the prejudice and detriment of his beneficiary or correlate. A person acting in a fiduciary capacity including an agent, corporate officer, or director, who secretly acquires in his own name, a succeeding or renewal lease on premises which his principal or his corporation is then occupying as lessee, in equity, holds such new lease *for the benefit of his principal or his corporation*.

16

*Id.* (emphasis added). This paragraph articulates the simple proposition that a constructive trust may be impressed for the benefit of a principal where an agent breaches his fiduciary duty to that principal and obtains an interest to the detriment of the principal. However, *Wash. Theatre Co.* does not articulate a rule where a third party, who is not owed a fiduciary duty, can step in and seek a constructive trust for its own benefit simply because a fiduciary duty owed to *someone else* was breached. That would be akin to a third party, let's call it XYZ Theatre Co., arguing in *Wash. Theatre Co.* that it should be named as beneficiary, even though Connors owed XYZ no fiduciary duty and XYZ experienced no discernible harm from the breach of that fiduciary duty. Similarly, here, while it's theoretically possible that Myers breached a duty to Rood or Vision Armory (on which the Court takes no position), there is simply no evidence that Myers breached a duty to Lycurgan justifying imposition of a constructive trust for Lycurgan's benefit.

 Accordingly, the Court finds that a constructive trust cannot be impressed for Lycurgan's benefit based on a breach of fiduciary duty to Vision Armory.

The Court next addresses Lycurgan's assertion that "[t]he money that Richard R. Rood, Jr. and his entities took from Lycurgan, Inc., were parlayed by Myers and Rood into a very successful web business . . . ." (DE 258 at 5–6.) The Court notes that Lycurgan never explicitly argues that a constructive trust should be impressed for Lycurgan's benefit based on Rood defrauding Lycurgan and Myers knowing about the fraud. Rather, Lycurgan only vaguely alludes to this argument, writing:

> [T]he Cousins Myers and Rood, with knowledge of the claims of Lycurgan to the money that was fraudulently obtained from Lycurgan, built a very successful business. Ironically, Myers having control obtained in that trusted position, turned on Rood, and seized the "opportunity" and took control of Vision Armory's websites." Myers is a trustee of the property of Vision Armory, and should be held to account for that property.

(DE 258 at 20.) This paragraph can be separated into two distinct arguments. First, as discussed above, Lycurgan argues that Myers breached his fiduciary duty to Vision Armory and Rood and that a constructive trust should be impressed for Lyucrgan's benefit based on this breach. This argument spans most of Lycurgan's brief, and includes legal citations in support. However, this paragraph also includes what appears to be a second argument: that Rood defrauded Lycurgan and Myers took money knowing it was fraudulently obtained, and that a constructive trust should be impressed on the proceeds of that money for Lycurgan's benefit.

While the first argument includes citations in support, this second argument is skeletal and vague. There are scattered references throughout Lycurgan's brief asserting that the funds Rood fraudulently took from Lycurgan "provided the seed money" for Myers websites Ar-parts.net and 80-Lowers.com. (DE 258 at 5, 6, 17, 20.) However, what Lycurgan fails to explain is how Lycurgan providing the seed money for those websites relates to their request to impress a constructive trust. Furthermore, while Lycurgan includes case law regarding impressing a constructive trust where a fiduciary duty is breached, Lycurgan fails to include case law addressing impressing constructive trusts on third parties after fraudulent transfers. Due to the failure to develop the second argument in any meaningful way, it fails. *See United States v. Berkowitz,* 927 F.2d 1376, 1384 (7th Cir. 1991) ("[P]erfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived . . . .").

Even if this second argument had been developed, it would fail, since Lycurgan has not provided clear and convincing evidence that Myers or TGH received any of the money Rood fraudulently took from Lycurgan. Under Indiana and California law, in order to impress a constructive trust, there must be clear and convincing evidence that Myers or TGH has some property to which Lycurgan is rightfully entitled. *Communist Party v. 522 Valencia, Inc.*, 41 Cal.

Rptr. 2d at 624 ("[I]n order to conclude that appellants wrongfully retained the disputed property, there must be some basis for determining that respondent actually owned or was rightfully entitled to possession of it."); *see Heinzman v. Mason*, 694 N.E.2d 1164, 1166 (Ind. Ct. App. 1998) (emphasis added) ("[O]ne who acquires property through his own wrongdoing holds that property in constructive trust for the person or persons, other than the wrongdoer, *legally entitled* to the property.").

Lycurgan repeatedly asserts in a conclusory manner that Myers' businesses, in particular Ar-parts.net and 80-lower.com, were funded by the $578,839.20 taken by Rood and the entity defendants. However, the only piece of evidence in the record providing any support to this assertion is deposition testimony from Myers that Rood had mentioned during their initial discussions that he had received a check of $100,000 from someone in California. (DE 257 at 22:22–23:6.) But this evidence does not support the inferences that: (a) Lycurgan was the only one to provide a $100,000 payment to Rood; (b) Myers was paid out of this $100,000; or (c) Myers then used that payment to build his websites. Any of those conclusions amounts to pure speculation.

In fact, Lycurgan's prior representations, upon which entry of default judgment was based, run contrary to its present, unsupported claim that the $578,839.20 was used to build Ar-parts.net and 80-lower.com. In its motion for default judgment, Lycurgan traced how Rood used the money it paid him. (DE 215 ¶ 16.) Lycurgan asserted that Rood made $240,500 in personal purchases, going towards a down payment on a house, multiple cars, gambling expenses, as well as payments to Rood's mother. (*Id.*) Lycurgan also estimated that $308,000 went to one of the Rood's suppliers for the receivers, Quickparts. (*Id.*) Meaning, Lycurgan had previously traced what ultimately happened to $548,500.00 of its payments to Rood, none of which went to Myers.

While that leaves roughly $30,000 unaccounted for, Lycurgan has failed to provide any evidence that even this amount was used to fund Myers' websites.

Furthermore, even if there was evidence showing that Lycurgan's property had ended up with Myers, there is no evidence that Myers knew that the property was obtained fraudulently by Rood or that he failed to give value for the property. In Indiana, "a third person, to whom an interest in trust property is transferred by the trustee in breach of trust, takes his interest free of the trust if he: (1) takes for value and without notice of the breach of trust; and (2) is not taking part in what he knows to be an illegal transaction." Ind. Code § 30-4-4-2. The law is the same in California. *See United States v. $4,224,958.5*7, 392 F.3d 1002, 1004 (9th Cir. 2004) ("The transferee of the fraudster who gives no value for the property is in no better position than the fraudster; *a fortiori*, that is the case when the transferee is aware of the fraud.").

Here, Myers provided a declaration that his companies were paid a total of $62,279.55 in sales commissions. (DE 242 ¶ 11.) However, as Lycurgan admits, Myers and his companies performed web design services in exchange for these payments. (DE 242 ¶ 4; DE 258 at 11, 13; DE 264 at 4.) Lycurgan does assert that Myers knew that he was being paid with "money that was fraudulently obtained from Lycurgan." (DE 258 at 20.) However, the only factual support it has for this assertion is the following line in an email from Rood to Myers:

> I also did not change the marked up price at 26.92 ea as the represented price stated in the lawsuit for obvious reasons which I told you I would and you directed me not to, "just leave it there".

(*Id.* at 11; DE 264-1, Exhibit C.) While this email shows that Myers may have known about a lawsuit, it does not support that he knew the underlying facts of that lawsuit or that Rood's transaction with Lycurgan was fraudulent. On the other hand, Myers and TGH presented evidence supporting that Myers did not know the facts underlying the lawsuit. In a declaration,

Myers asserted that he did "not know of the facts or circumstances of this lawsuit" prior to being served with Lycurgan's subpoena request in March of 2021. (DE 264-1 ¶ 7.) This evidence supports a finding that Myers provided services in exchange for the money he received, did not know about Rood's fraudulent transaction with Lycurgan, and did not partake in it. Therefore, even had there been clear and convincing evidence that Myers received property from Lycurgan, there is evidence indicating that Myers was a good faith purchaser.

Lycurgan has not demonstrated by clear and convincing evidence that Myers or TGH has some property to which Lycurgan is rightfully entitled, either by tracing the funds back to Lycurgan or by showing breach of a fiduciary duty owed to Lycurgan. Accordingly, the Court denies Lycurgan's request to impress a constructive trust.

**D.      Conclusion**

For the foregoing reasons, the Court GRANTS Chad Myers and TGH's motion to intervene. (DE 262.) The Court also GRANTS Lycurgan's motion to seal the deposition of Chad Myers.  (DE 260). However, the Court DENIES Lycurgan's motion to impress a constructive trust. (DE 258.) Furthermore, Lycurgan's request for an order to show cause is DENIED as MOOT. (DE 258.)

Lastly, now that its motion for a constructive trust has been denied – the sole basis in support of the equitable claims – the Court orders Lycurgan to show cause why his equitable claims and this lawsuit should not now be dismissed.  Lycurgan is directed to either dismiss these claims or offer a meritorious basis for maintaining those claims in the next 20 days. Failing to do either, the Court intends to dismiss this lawsuit.[8]

---

[8] While seeking post-judgment discovery, the Court granted multiple extensions to Lycurgan, but warned them twice that, when discovery closed, "Plaintiff's counsel [could] then either dismiss the equitable claims or pursue a judgment from the Court on their merits based upon the evidence at that time." (DE 230; DE 238.) The Court also

SO ORDERED.

ENTERED: March 28, 2022

                              /s/ JON E. DEGUILIO
                              Chief Judge
                              United States District Court

---

warned Lycurgan's counsel that he should not "seek to further prolong it unless he can do so in good faith." (DE 255.) Plaintiff pursued a judgment on the merits by filing their motion to impress a constructive trust (DE 258), but failed to show that relief was merited. A district court may dismiss actions sue sponte if a plaintiff is given notice that dismissal may result and an opportunity to respond. *Stewart Title Guar. Co. v. Cadle Co.*, 74 F.3d 835, 836 (7th Cir. 1996) ("If the district court dismissed Stewart's action *sua sponte,* it was required to give Stewart notice of its intent to do so and an opportunity to respond.").